926 So.2d 624 (2006)
Carlos HURTADO
v.
CJC SERVICE, INC. and American Interstate Insurance Company.
No. 05-CA-736.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 2006.
*625 Leonard I. Cardenas, III, Attorney at Law, Baton Rouge, Louisiana, for Plaintiff/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
Claimant, Carlos Hurtado, appeals the dismissal of his claim for workers' compensation benefits due to lack of subject matter jurisdiction. For the following reasons, we affirm.
Claimant was injured on March 24, 2000 while working for a cubicle installation company, CJC Service, Inc. ("CJC"), in the state of Georgia. Claimant alleges that while working as an installer for CJC he was hit in the head and body by equipment and suffered disabling spine and back injuries. CJC, through its insurer, American Interstate Insurance Company, began paying workers' compensation benefits to claimant pursuant to Georgia's workers' compensation laws. On August 27, 2004 claimant filed a Disputed Claim for Compensation against defendants, CJC and American Interstate Insurance Company, seeking Louisiana workers' compensation benefits for the March 24, 2000 incident.
Defendants filed a Declinatory Exception of Lack of Subject Matter Jurisdiction and the parties agreed to submit the matter on memoranda and depositions. The trial court granted the exception and dismissed the claim, with prejudice, on jurisdictional grounds only, preserving all of claimant's substantive rights. Claimant appeals.
The record includes the depositions of claimant, Ronald Cuandra, and Carlos Cuandra.
*626 Claimant testified that he performed carpentry work in Louisiana for approximately four years before leaving that job because he "had a job offer in Atlanta" with CJC. According to claimant, a friend, Marco Lorio ("Lorio"), who was then a CJC supervisor, called and offered him a job with CJC. Lorio told claimant that "they needed people they could trust who were responsible" and that "there was opportunity to improve." Claimant told Lorio that he did not want the job unless it paid more than his present job. Lorio responded by saying they "would talk about that in Atlanta." Claimant further testified that it was his "understanding" that he had the job at that point. When asked what Lorio said during the phone conversation that prompted this conclusion, claimant testified, "Well, like I said before, he  the trust. He knew me. He knew the type of person that I am and also, that I'm very good working with my hands."
In Georgia claimant was first taken to job sites in the area because, "[t]hey wanted me to see what the job was like to see if I liked the work and then we would meet." He then met with Carlos Cuadra, Ronald Cuadra, and Marco Lorio at CJC's main office. They discussed how CJC was a growing business with advancement opportunities for personnel they could trust.
Claimant could not recall whether he provided CJC with any employment documentation before the meeting. He did remember filling out a form in Georgia, but according to claimant it was just "a formality." While working for CJC, claimant lived in Atlanta, Georgia. During his tenure with CJC, he was unaware of any CJC job sites in Louisiana.
Ronald Cuadro ("Ronald") testified that he was operations manager for CJC at the time claimant was hired. His duties included all hiring for CJC. He stated that CJC was always looking for good candidates and, "if somebody walks into our door, I interview him and he looks like a strong candidate, I will hire him." In this case Lorio brought claimant to Ronald's office in Atlanta for a job interview. According to Ronald, Lorio did not have the authority to hire employees for CJC and claimant was not hired before Ronald interviewed him. Ronald did not participate in any conversations between Lorio and claimant regarding a job with CJC until the day of the interview. Further, Ronald did not speak with claimant "on the telephone or otherwise" regarding a job with CJC until claimant arrived in Georgia and met with him.
Carlos Cuadro ("Carlos"), Robert's brother, testified that he was the owner of CJC. As such, he was involved in the hiring of claimant. Carlos stated that Lorio did not participate in the interview process and did not have authority to hire employees for CJC. Further, claimant had not been hired prior to the interview in Atlanta. Carlos testified that he was not privy to any conversations Lorio and claimant might have had regarding employment with CJC.
Carlos first met claimant when he came to Atlanta to apply for a job and knew nothing at all about claimant before the interview. Claimant did not have an appointment, but rather "just showed up." According to Carlos, claimant told him during the interview that he came to Atlanta looking for work because the job market in New Orleans was "dead." He further testified that it was he and Ronald's policy to confer privately post-interview before offering a candidate a job.
On appeal, claimant argues that his contract of hire with CJC was made in Louisiana, and that therefore La. R.S. 23:1035.1 applies.
*627 La. R.S. 23:1035.1 provides, in pertinent part:
(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he... would have been entitled to the benefits provided by this Chapter [Chapter 10, Workers' Compensation] had such injury occurred within this state, such employee ... shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
...
(b) he is working under a contract of hire made in this state.
...
Claimant asserts that the contract of hire was entered into in Louisiana because he reasonably believed Lorio was authorized to offer him the job via telephone and because during their conversation both parties intended that claimant leave his job in Louisiana to begin employment with CJC in the state of Georgia. We disagree.
In determining whether a contract should be regarded as a Louisiana contract or that of another state in workers' compensation cases, the parties' intent should be paramount. Moore v. KLLM, Inc., 96-38 (La.App. 5 Cir. 4/30/96), 673 So.2d 1268, 1272. Some of the factors to be considered in determining the parties' intent include the domicile of the parties, the nature of the work to be done, and the place where the employment was initiated. Id.
In the present case, there is nothing in the testimony of either Carlos or Ronald to indicate that it was their intention to authorize Lorio to hire claimant over the telephone. In fact, they both testified that Lorio was not authorized to hire personnel and that claimant was not hired prior to coming to Georgia. Also, they both testified that they were not involved in Lorio's telephone conversation with claimant about employment with CJC. Further, claimant expressed his intention to not accept a job that paid less than his present position, during his conversation with Lorio. According to claimant, Lorio left the issue of salary unresolved, only telling claimant that salary would be discussed in Georgia. Claimant also testified that he was in Georgia when he filled out an employment form for CJC and that while employed by CJC he lived and worked in Georgia, not Louisiana. Therefore, we find that claimant was not working under a contract for hire made in Louisiana.
Accordingly, we affirm the judgment of the trial court granting defendants' exception of lack of subject matter jurisdiction.
AFFIRMED.